Peauhon, O. J.
-“From and after the passage of this .act, all white men, residents of the Confederate States, between tlie ages of seventeen and fifty, shall be in the military service of the Confederate States for"the war." — Act of Congress, 17th Feb., 1864, sec. 1.
. One of two’eonstruetions must be adopted : 1st. It applies to individuals who arc, at the date of the passage of the act, between the ages of 17 and 50, as dcscripiió per-sonarían, the same, in legal cfiect. as if the persons answering the. description were named, and puts them in the military service '‘for (that is, during)'the war." This meaning can he given by adding the words “who- are now’' so as ifiake it read “all white’men" residents of the Confederate States ivho are itnw'between the ages of 17 and 50 shall he in the service of the Confederate States for (that is, during) the war." “This act shall taire effect from and after its passage." According to tins construction, all white men, rvho are, at the date of the passage of the act, under the age of fifty, would be liable tp .military service during the war, notwithstanding ’they afterward'' arrive at that age, because they are embraced by the description, and all white men who are, at the date of the passage of the act, under tké-age of 1-7, would not be-liable to military service, beeause the;» do not answer the description. So,that if this construction he adopted, and judgment is .therefore rendered against the petitioner, the Courts apd Judges will he hound, as a matter of course, upon the authority of this decision, to discharge every one who has been, or may he, put in the military service, who was not, at the nassage of the act, 17 years ef age. ' .
There are two fatal objections to this construction : 1st, in order to express the ■ meaning it is necessary to add *6 words wbicb.are not found in the act, and tbo addition ®f v/bioli varies the sense materinUy. This is not authorized by any rule of construction. 2d. According to the whole scope and tenor of the act, one of iis main objects is to bring into the military service the young men who are continuously arriving at the age of l'l; and the purpose is not only to embrace those who*are It at the passage of the act, but all who shall thereafter arrive at that age : which-purpose would be defeated by this construction, and it can only be contended for on the- ground of an oversight or casus 'omissus in framing the act, which, in so important a matter, the Court is not at liberty to assume.
Th; second construction is that the. section applies to a class composed oí .all white men-between the ages of 11 and 58, without regard to the time wbe/i they may he between those age¡., and puts them iiito military service as a clat'-s fox (that is, during),the war. This meaning cam he given, simply by changing the po-'tiou of ¡ha words. C! for the war,” so as to mate the section road-, for (that is, during) the war, all white met), residents of the Confederate States, between the ages of l'J and f-0, shall he in the military service of the Confederate Sute.-.' ‘‘This act shall take effect from and after Cii passage." The Court is,authorized, by a well-soitled 5 ule of construction, to change the position of words. S¿<¡ jliiv.irris on Ctafcuios.
Indeed, this, change in.the position of words in this instance, is only ior the purpose of making fin' cense clearer. For if persone 'are conscripted an a, claw;, it follows, of course, that they cease to ho liable .when they pass out of the class,-and become liable when they outer cite class. When no time is. fixed at which they are to lie between the ages, designated, the conscription is necessarily asa class ; the distinction being, when a time is fixed the con *7 scription is as individuals, descriptio personarum. Whea no time is fixed, the conscription is as a c\ass. Here the time is fixed ; so the conscription is as a class, anrT that consequence follows without reference to the position of the words “ for (that is, during) the war,” although it malíes the sense clearer to put the words at the beginning of the section, .instead of at the end. “ For the war is evidently used in the sonso of “ during the war,” and conceding that the conscription' is by a class, ii’.ihe words “for (that is, during;) the war ” had been placed at the beginning of the section, the fací that a “ senior reservo ” would not bo Hablo a-fter arriving at the age of fifty, is too plain for.discussion ; and it would be strange if the result can bo different from- the circumstance, that the words “ for (that is, during) the war ’ happen' to ho tit the end of the section. Those words Jmvo no reference- to the. time of cesvtve; that is fixed hy consorlpt'.ug as u class, and the words are manifestly used to enact that the intended conscription of all between the ages of 1'1 and 50 should continue, or bo in force, during the war.
According to this construction, ali persons under the age of se\enteen, for the time to cómo,-on arriving at -that age, enter into the class, and are liable to Military sér-viGe ; and all persons- under the ago of fifty, from time to time, on arriving at that age, pass out of the class, and are no longer liable to military service : the ride working both ways, unless, some provision be made to the contrary.
It may be objected td this construction, that it lots out of the military service all who arrive at the ago of fifty. The reply is, there is nothing in the act tenijiug to show that it was not the intentipn to let men-, who were over forty-five when conscripted, go'out of the service on arriving at the age of fifty ; and there is reason to suppose' such *8 was the intention, on the idea that heads of families, at- • ter arriving at the age of fifty, would be of more uso to the country at home, than if they are kept in the military service as senior reserves. But assume this not tobe so, and that this construction also supposes a casus omis-sus — how does it compare with the casus omissus implied by the first construction ? .This lets .out ot the sénior reserves a few old men, comparatively speaking ; while that fails to take in a large body .of young men, who are looked to as the main resource of the country for future military operations in the regular army ! By reference to the census statistics, the number of young men arriving at the ago of seventeen in the course of a'year, in proportion to-old men arriving at the age of fifty, is about fifteen to one. From this it may be seen how much the public service will lose by adopting the first construction and rejecting the second : and of course if a casus omissus is to be implied in both constructions, that should be supposed which is of least consequence, aud is the most likely to have occurred. The Court is of opinion that the second is the proper construction. > :
. A perusal of the whole act, will tend to support this-construction. Mr. Winston, who argued for the government, referred to the 5th section as tending to support the first construction. It seems to. us that this, section - sustains the conclusion to which wo have arrived. The provision, that persons failing to enrol themselves at the time required u shall be placed in'tjie service-in the field, for the war, in the same manner as though they were* between the ages of eighteen- and forty-five,” is imposed as a penalty diUsuch as are recusant; in respect to whom, the term of service is fixed, and excludes the idea of a general liability of all to serve for the tear. ■ The sugges *9 t-ion of tlio learned counsel, that tlie proviso in this section, that tlie persons liientionéd shall constitute a reserve for State defence, &c., should be modified by adding the words, “ except those who fail to enrol themselves,” has nothing to support it.
Our conclusion is also strengthened by‘reference to the other conscription acts. íhe act of April, 1862, conscripts, as a ddss. those between the ages of 18 and 35, for three years, or the war. The act of September, 1862, conscripts, as a'class, for three years or the war, and the'effect of passing out of this class, to relieve from further liability .to service, is prevented by a proviso, “when 'once enrolled all persons, between the ages of 18 and 45 shall serve the full Um,c.” This proviso was necessary, to .show an intention that, although the conscription was as a class, still, in respect to persons who should, after being enrolled, arrive at the age of forty-five, it was deemed important to retain them in service for the full time. The act under consideration in like manner conscripts for*(that is, during) the war, asli class, those between the ages of 17 and 50.' There is no proviso to continue in the service those who arrive at the age of fifty and pass out of the class. Whether a proviso to prevent this effect was left out on purpose, because it was not deemed expedient to keep senior reserves in service after they became fifty years of age, or was ,an oversight, We have no means of deciding. ' Our duty is to expound the law according to the sense of the words used by the law-makers ; and, in the absence of a proviso to the emtrary, it follows, of course, that when a ‘£ senior reserve ’' arrives at the age of fifty, he passes out of the class, and is no longer liable to military service.
There is no error in the judgment below.